UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **Victor Leal**; **Patrick Von Dohlen**; **Kim Armstrong**,<br><br>                    Plaintiffs,<br><br>v.<br><br>**Alex M. Azar II**, in his official capacity as Secretary of Health and Human Services; **Steven T. Mnuchin**, in his official capacity as Secretary of the Treasury; **Eugene Scalia**, in his official capacity as Secretary of Labor; **United States of America**; **Kent Sullivan**, in his official capacity as Texas Commissioner of Insurance; **Texas Department of Insurance**,<br><br>                    Defendants. | Case No. 2:20-cv-00185 |

# COMPLAINT

The Affordable Care Act empowers the Health Resources and Services Administration to unilaterally determine the "preventive care and screenings" for women that private health insurance must cover. *See* 42 U.S.C. § 300gg-13 (attached as Exhibit 1). In 2011, the Health Resources and Services Administration issued an edict that compels private insurance to cover all forms of FDA-approved contraceptive methods, including contraceptive methods that operate as abortifacients. This makes it impossible for individuals to purchase health insurance unless they agree to subsidize other people's contraception, even though millions of Catholics throughout the United States regard the use of contraception—and actions that make one complicit in its distribution and use—as immoral and contrary to the teachings of their religious faith. It also prevents millions of Americans who do not want or need contraceptive

coverage from purchasing health insurance that excludes this unnecessary coverage, even though most individual consumers of health insurance have no need for contraception and would rather have less expensive insurance that excludes this unwanted "benefit."

The government of Texas is also forcing private health insurers to cover contraception even when their customers do not need it and do not want it. In 2001, Texas enacted a "contraceptive equity law," which compels health benefit plans to cover prescription contraceptive drugs or devices regardless of whether their customers want this coverage, unless the insurer agrees to drop coverage of *all* prescription drugs or devices. *See* Tex. Ins. Code §§ 1369.104–.109 (attached as Exhibit 9). The Texas statute has a narrow religious exemption for health benefit plans that are "issued by an entity associated with a religious organization." Tex. Ins. Code § 1369.108(a). But that exemption is no help to individual consumers of health insurance who want to obtain contraceptive-free health insurance in the marketplace but are unable to do so.

Plaintiffs Victor Leal, Patrick Von Dohlen, and Kim Armstrong are suffering injury from the defendants' enforcement of these contraceptive-coverage mandates, and they seek declaratory and injunctive relief against their continued enforcement.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1369.

2. The Court has subject-matter jurisdiction over the claims brought against Commissioner Sullivan and the Texas Department of Insurance because the Texas Religious Freedom Restoration Act waives the defendants' sovereign immunity. *See* Tex. Civ. Prac. & Rem. Code § 110.008(a) ("Subject to Section 110.006, sovereign immunity to suit and from liability is waived and abolished to the extent of liability

created by Section 110.005, and a claimant may sue a government agency for damages allowed by that section.").

3.   Section 110.008(b) of the Texas Civil Practice and Remedies Code provides that the Texas Religious Freedom Restoration Act "does not waive or abolish sovereign immunity to suit and from liability under the Eleventh Amendment to the United States Constitution." Tex. Civ. Prac. & Rem. Code § 110.008(b). The Eleventh Amendment, however, does not shield a state from lawsuits brought by its own citizens, and each of the plaintiffs in this case is a citizen of Texas. *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020) ("[T]he Eleventh Amendment . . . applies only if the plaintiff is not a citizen of the defendant State.").

4.   The constitutional sovereign immunity established in *Hans v. Louisiana*, 134 U.S. 1 (1890), which protects states from lawsuits brought by their own citizens, rests entirely on the original meaning of Article III, and not on the Eleventh Amendment. *See id.* at 12–17. Section 110.008(b) therefore cannot shield the State of Texas from lawsuits brought by its own citizens, and any sovereign immunity that the State enjoys by virtue of Article III and *Hans* has been unequivocally relinquished in section 110.008(a). *See* Tex. Civ. Prac. & Rem. Code § 110.008(a) ("[S]overeign immunity to suit and from liability is waived and abolished to the extent of liability created by Section 110.005").

5.   Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

6.   Plaintiff Victor Leal is a citizen of Texas who resides in Potter County.

7.  Plaintiff Patrick Von Dohlen is a citizen of Texas who resides in Bexar County.

8.  Plaintiff Kim Armstrong is a citizen of Texas who resides in Hood County.

9.  Defendant Alex M. Azar II is the U.S. Secretary of Health and Human Services. He may be served at his office at 200 Independence Avenue SW, Washington, D.C. 20201. Secretary Azar is sued in his official capacity.

10.  Defendant Steven T. Mnuchin is the U.S. Secretary of the Treasury. He may be served at his office at 1500 Pennsylvania Avenue NW, Washington, D.C. 20220. Secretary Mnuchin is sued in his official capacity.

11.  Defendant Eugene Scalia is the U.S. Secretary of Labor. He may be served at his office at 200 Constitution Avenue NW, Washington, D.C. 20210. Secretary Scalia is sued in his official capacity.

12.  Defendant United States of America is the federal government of the United States of America.

13.  Defendant Kent Sullivan is the Texas Commissioner of Insurance. He may be served at his office at 333 Guadalupe, Austin, Texas 78701. Commissioner Sullivan is sued in his official capacity.

14.  The Texas Department of Insurance is an agency of the state of Texas. It may be served at its offices at 333 Guadalupe, Austin, Texas 78701.

## THE FEDERAL CONTRACEPTIVE MANDATE

15.  The Affordable Care Act requires group health plans and health-insurance issuers to cover "with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph." These "preven-

tive care and screenings" for women must be provided without any cost-sharing requirements such as deductibles or co-pays. *See* 42 U.S.C. § 300gg-13(a)(4) (attached as Exhibit 1).

16. On August 1, 2011—more than one year after the Affordable Care Act was signed into law—the Health Resources and Services Administration issued guidelines requiring that all FDA-approved contraceptive methods be covered as "preventive care" under 42 U.S.C. § 300gg-13(a)(4). These HRSA guidelines of August 1, 2011, did not go through notice-and-comment rulemaking procedures.

17. In response to the HRSA's decree of August 1, 2011, the Secretary of Health and Human Services, the Secretary of the Treasury, and the Secretary of Labor issued notice-and-comments regulations to implement HRSA's decision to require private insurers to cover contraception. These rules are known as the federal "Contraceptive Mandate," and they are codified at 45 C.F.R. § 147.130(a)(1)(iv), 29 C.F.R. § 2590.715–2713(a)(1)(iv), and 26 C.F.R. § 54.9815–2713(a)(1)(iv) (attached as Exhibits 2–4).

18. On May 4, 2017, President Trump issued an executive order instructing the Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health and Human Services to amend the Contraceptive Mandate to address conscience-based objections. *See* Executive Order 13,798.

19. In response to this order, the Department of the Treasury, the Department of Labor, and the Department of Health and Human Services issued a final rule on November 15, 2018, that exempts any non-profit or for-profit employer from the Contraceptive Mandate if it opposes the coverage of contraception for sincere religious reasons. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (November 15, 2018) (attached as Exhibit 5).

20. The final rule also sought to accommodate individuals who object to contraceptive coverage in their health insurance for sincere religious reasons. *See id*. at 57,590 (creating a new provision in 45 C.F.R. § 147.132(b)). Under the original Contraceptive Mandate, individual religious objectors were forced to choose between purchasing health insurance that covers contraception or forgoing health insurance entirely—unless they could obtain insurance through a grandfathered plan or a church employer that was exempt from Contraceptive Mandate. The final rule give individual religious objectors the option of purchasing health insurance that excludes contraception from any willing health insurance issuer.

21. The final rule was scheduled to take effect on January 14, 2019. On January 14, 2019, however, a federal district court in Pennsylvania issued a nationwide preliminary injunction against its enforcement. *See Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa.), ECF No. 135 (attached as Exhibit 6); *id*., ECF No. 136 (attached as Exhibit 7). The Third Circuit affirmed this nationwide preliminary injunction on July 12, 2019. *See Pennsylvania v. President of the United States*, 940 F.3d 543 (3d Cir. 2019). The Supreme Court granted certiorari and vacated the nationwide injunction in *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, No. 19-431 (July 8, 2020), but the litigation over the Trump Administration's rule continues, and the plaintiffs in *Pennsylvania v. Trump* have vowed to seek a new nationwide injunction against the rule on remand.

22. In response to the nationwide injunction issued in *Pennsylvania v. Trump*, a lawsuit was filed in the Northern District of Texas to enjoin federal officials from enforcing the Obama-era contraceptive mandate against the religious objectors protected by the Trump Administration's final rule of November 15, 2018. The district court held that the protections conferred in the Trump Administration's final rule were compelled by the Religious Freedom Restoration Act, and permanently enjoined

federal officials from enforcing the Contraceptive Mandate against any religious objector protected by the final rule. *See DeOtte v. Azar*, 393 F. Supp. 3d 490 (N.D. Tex. 2019); *see also* Exhibit 8 (final judgment in *DeOtte*). As a result of *DeOtte*, the protections conferred by the Trump Administration's final rule are in full force and effect because they have been incorporated into the *DeOtte* injunction, even though the final rule itself remains subject to litigation.

23. Despite the *DeOtte* injunction, few if any insurance companies are currently offering health insurance that excludes coverage for contraception because a policy of this sort can only be offered to religious objectors rather than to the public at large. In addition, the Texas Contraceptive Equity Law remains in effect, which prohibits health insurers in Texas from excluding contraceptive coverage unless they also exclude coverage for all prescription drugs. So no health insurer in Texas is even permitted to offer a policy that excludes contraceptive coverage unless it drops all coverage for prescription drugs, and even then a policy of that sort may *only* be sold to individuals who hold sincere religious objections to contraception.

## THE TEXAS CONTRACEPTIVE EQUITY LAW

24. In 2001, Texas enacted a "contraceptive equity" law, which requires every health benefit plan that covers prescription drugs and devices to cover every "prescription contraceptive drug or device approved by the United States Food and Drug Administration." Tex. Ins. Code § 1369.104(a) (attached as Exhibit 9).

25. The Texas statute also forbids health benefit plans to impose cost-sharing provisions (such as co-payments or deductibles) for prescription contraceptive drugs or devices "unless the amount of the required cost-sharing is the same as or less than the amount of the required cost-sharing applicable to benefits for other prescription drugs or devices under the plan." Tex. Ins. Code § 1369.105(a) (attached as Exhibit 9).

26. These statutory requirements are also reflected in section 21.404(c) of Title 28 of the Texas Administrative Code, which states: "No insurer may exclude from prescription drug benefits oral contraceptives when all other prescription drugs are covered." *See* 28 Tex. Admin. Code § 21.404(c) (attached as Exhibit 10).

27. The Texas contraceptive equity law does not require health benefit plans to cover "abortifacients" or any "drug or device that terminates a pregnancy." Tex. Ins. Code § 1369.104(c) (attached as Exhibit 9).

28. The Texas statute also provides a narrow religious exemption for any "health benefit plan that is issued by an entity associated with a religious organization." Tex. Ins. Code § 1369.108(a) (attached as Exhibit 9).

29. The religious exemption in section 1369.108(a) prevents religious *issuers* of health benefit plans from being compelled to underwrite contraceptive coverage. But that does nothing to protect individual consumers of health insurance, who are compelled to subsidize the use of contraception unless they forgo health insurance entirely or purchase a plan that excludes *all* coverage of prescription drugs.

30. The website of the Texas Department of Insurance currently states that health-insurance plans are required by state law to cover "prescription contraceptive drugs and devices and related services" as "mandated benefits." *See* Exhibit 11.

### ALLEGATIONS RELATED TO STANDING

31. Plaintiffs Victor Leal and Patrick Von Dohlen are devout Roman Catholics who oppose all forms of birth control, and they want to purchase health insurance that excludes coverage of contraception to avoid subsidizing other people's contraception and becoming complicit in its use.

32. Plaintiff Kim Armstrong has no religious or moral objections to any of the FDA-approved contraceptive methods. Ms. Armstrong, however, does not need or want contraceptive coverage in her health insurance because she had a hysterectomy

at age 21 and is incapable of becoming pregnant. Ms. Armstong is also 50 years old, and would likely be past her childbearing years even apart from her hysterectomy.

33. The federal defendants' enforcement of the Contraceptive Mandate, along with the state defendants' enforcement of Tex. Ins. Code §§ 1369.104–.109 and 28 Tex. Admin. Code § 21.404(c), make it impossible for the plaintiffs to purchase health insurance that excludes this unwanted and unneeded coverage for contraception, thereby inflicting injury in fact.

34. The federal Contraceptive Mandate continues to inflict injury in fact on Mr. Leal, Mr. Von Dohlen, and other religious objectors who wish to purchase health insurance. Although the *DeOtte* injunction permits issuers of health insurance to issue group or individual health-insurance coverage that excludes contraception to religious objectors, few if any insurance companies are offering health insurance of this sort because only a small number of individuals hold sincere religious objections to all forms of contraception. And even if a health insurer were willing to create and offer a policy that excludes contraceptive coverage solely for religious objectors, the Contraceptive Mandate drastically restricts the available options on the market to consumers who hold religious objections to contraceptive coverage. The Mandate requires any policy that covers *anyone* who lacks a sincere religious objection to contraception to cover all forms of FDA-approved contraceptive methods, without any deductibles or co-pays. Without the federal Contraceptive Mandate, insurers will have the freedom to offer policies that exclude contraceptive coverage to the general public, just as they did before the Contraceptive Mandate, which will expand the health-insurance options available to consumers who oppose contraceptive coverage for sincere religious reasons.

35. The federal Contraceptive Mandate also inflicts injury in fact on non-religious objectors such as Ms. Armstrong, who are forced to pay higher premiums for health insurance that covers contraceptive services that they do not want or need.

Millions of Americans have no need for contraceptive coverage in their health insurance for reasons that have nothing to do with religious or moral beliefs. This includes unmarried men, women who are past their childbearing years, women who have been sterilized, men who are married to women who are incapable of becoming pregnant, women who are celibate or practicing abstinence until marriage, and most members of the LGBTQ community. Yet none of these individuals have the option of acquiring less expensive health insurance that excludes contraceptive coverage, because they are unprotected by the *DeOtte* injunction and the Trump Administration's rules that exempt religious and moral objectors from the Contraceptive Mandate.

36. The state defendants' enforcement of the Texas Contraceptive Equity law prohibits health insurers from excluding coverage of non-abortifacient contraception unless they also exclude coverage of *all* prescription drugs, which drastically limits the scope of acceptable health insurance that Mr. Leal and Mr. Von Dohlen can purchase consistent with their religious beliefs. It also prevents Ms. Armstrong from purchasing health insurance that excludes contraceptive coverage but includes coverage for prescription drugs, thereby inflicting injury in fact.

37. The plaintiffs' injuries are fairly traceable to the defendants' enforcement of the federal Contraceptive Mandate and the Texas contraceptive equity law, and these injuries will be redressed by declaratory relief that pronounces these coverage mandates unlawful.

### CLAIM NO. 1—42 U.S.C. § 300gg-13(a)(4) VIOLATES THE APPOINTMENTS CLAUSE

38. 42 U.S.C. § 300gg-13(a)(4) requires private insurance to cover:

> with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.

39. This statute violates Article II of the Constitution by conferring "significant authority pursuant to the laws of the United States" on individuals who have not been appointed in conformity with the Constitution's Appointments Clause.

40. The Appointments Clause of Article II provides:

> [The President] shall have Power, by and with the Advice and Consent of the Senate, to . . . appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II § 2.

41. The members of the Health Resources and Services Administration are "officers of the United States," because they exercise "significant authority pursuant to the laws of the United States." *See Buckley v. Valeo*, 424 U.S. 1, 126 (1976) ("[A]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by s 2, cl. 2, of that Article."); *see also* Jennifer L. Mascott, *Who Are "Officers of the United States"?*, 70 Stan. L. Rev. 443 (2018). The power to unilaterally determine the "preventive care and screenings" that all health insurance must cover without cost-sharing qualifies as "significant authority pursuant to the laws of the United States."

42. Yet none of the members of the Health Resources and Services Administration who determine these "guidelines" have been nominated by the President or confirmed by the Senate, as required by the Appointments Clause. In addition, none of these individuals can reasonably be characterized as "inferior officers" when they have been given far-reaching powers to unilaterally decree the preventive care that health insurance must cover without any cost-sharing arrangements.

43. Even if the relevant members of the Health Resources and Services Administration could somehow be considered "inferior officers" under Article II of the Constitution, the plaintiffs have not been able to locate any Act of Congress that "vests" their appointment in the President alone, in the Courts of Law, or in the Heads of Departments—which is needed to escape the constitutional default rule of presidential nomination and Senate confirmation. 42 U.S.C. § 217a, for example, authorizes the Secretary of Health and Human Services to "appoint such advisory councils or committees . . . for such periods of time, as he deems desirable with such period commencing on a date specified by the Secretary *for the purpose of advising him in connection with any of his functions.*" 42 U.S.C. § 217a (emphasis added). But this statute cannot be used to appoint the individuals who establish HRSA "guidelines" when 42 U.S.C. § 300gg-13(4) gives binding force to those pronouncements. These officers are not "advising" the Secretary, and they are no longer being appointed "for the purpose of advising" him. Instead, they are *deciding* the preventive care that private insurance must cover.

44. The Court should therefore declare that the federal Contraceptive Mandate—along with any and all preventive-care mandates based on a guideline issued by the Health Resources and Services Administration after March 23, 2010[1]—is unconstitutional and unenforceable.

### CLAIM NO. 2—42 U.S.C. § 300gg-13(a)(4) VIOLATES THE NONDELEGATION DOCTRINE

45. 42 U.S.C. § 300gg-13(a)(4) requires private insurance to cover:

> with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.

---

1. March 23, 2010, is the date on which the Affordable Care Act was signed into law.

46. To the extent that 42 U.S.C. § 300gg-13(a)(4) empowers future iterations of the Health Resources and Services Administration to unilaterally determine preventive care that private insurance must cover, it unconstitutionally delegates legislative power without providing an "intelligible principle" to guide the agency's discretion.

47. The court should therefore declare that 42 U.S.C. § 300gg-13(a)(4) violates Article I by unconstitutionally delegating legislative power to the Health Resources and Services Administration. The court should further declare that the federal Contraceptive Mandate—and any other preventive-care mandate derived from an HRSA guideline that was issued after March 23, 2010—is unconstitutional and unenforceable.

### CLAIM NO. 3—THE FEDERAL CONTRACEPTIVE MANDATE VIOLATES THE FEDERAL RELIGIOUS FREEDOM RESTORATION ACT

48. The federal Contraceptive Mandate violates the Religious Freedom Restoration Act by making it difficult or impossible for individuals and employers with religious exemptions to purchase health insurance that excludes contraceptive coverage. This imposes a substantial burden on the exercise of religion.

49. There is no compelling governmental interest in making contraceptive services available at zero marginal cost. And even if there were, there are ways to achieve this goal in a manner that is less restrictive of the plaintiffs' religious freedom.

50. The Court should therefore declare the federal Contraceptive Mandate unlawful and contrary to the Religious Freedom Restoration Act.

### CLAIM NO. 4—THE TEXAS CONTRACEPTIVE-EQUITY LAWS VIOLATE THE TEXAS RELIGIOUS FREEDOM RESTORATION ACT

51. The Texas contraceptive-equality laws violate the Texas Religious Freedom Restoration Act by making it impossible for individuals and employers with religious

objections to purchase health insurance that excludes contraceptive coverage, unless they forgo all coverage of prescription drugs. This imposes a substantial burden on the exercise of religion. *See* Texas Civ. Prac. & Rem. Code § 110.003(a) ("[A] government agency may not substantially burden a person's free exercise of religion.").

52. There is no compelling governmental interest in forcing health-benefit plans to cover prescription contraceptive drugs or devices whenever they choose to cover other prescription drugs. And even if there were a compelling governmental interest at stake, there are other ways to achieve the relevant goal in a manner that is less restrictive of the plaintiffs' religious freedom.

53. Mr. Leal provided the required 60-day notice to the state defendants before filing suit under the Texas Religious Freedom Restoration Act. *See* Tex. Civ. Prac. & Rem. Code § 110.006(a); *see also* Exhibits 12–16.

54. Mr. Von Dohlen has mailed the notice letter required by section 110.006(a) of the Texas Civil Practice and Remedies Code, but the 60-day clock has not yet run. So Mr. Von Dohlen is not asserting a claim against the state defendants at this time, but he will respectfully seek leave to add a Texas RFRA claim after the 60-day waiting period expires.

55. Ms. Armstrong is not asserting a claim against the state defendants under Texas RFRA, because she has no religious or moral objections to contraceptive coverage.

56. The Court should therefore declare that the state defendants' enforcement of the Texas contraceptive-equity laws, including Tex. Ins. Code §§ 1369.104–.109 and 28 Tex. Admin. Code § 21.404(c), substantially burdens the exercise of religion, in violation of the Texas Religious Freedom Restoration Act, and it should enjoin the state defendants from enforcing them.

57. The Court should also order the state defendants to ensure that religious objectors in Texas can obtain health insurance that excludes contraceptive coverage, and to use their regulatory authority to require insurers to offer such plans if needed.

## DEMAND FOR JUDGMENT

58. The plaintiffs respectfully request that the court:

   a. declare that 42 U.S.C. § 300gg-13(a)(4) violates the Appointments Clause by empowering individuals who have not been appointed in conformity with the Appointments Clause to unilaterally determine the preventive care that health insurance must cover, and that the federal Contraceptive Mandate is therefore unconstitutional and unenforceable;

   b. declare that 42 U.S.C. § 300gg-13(a)(4) violates Article I of the Constitution by delegating legislative power to the Health Resources and Services Administration without providing an "intelligible principle" to guide its discretion, and that the federal Contraceptive Mandate is therefore unconstitutional and unenforceable;

   c. declare that the federal Contraceptive Mandate violate the federal Religious Freedom Restoration Act by restricting the amount of acceptable health-insurance plans available to those who object to contraception for sincere religious reasons;

   d. enjoin the federal defendants from enforcing the federal Contraceptive Mandate, along with any other agency rules or agency actions that attempt to implement any coverage mandate based on an HRSA guideline that was issued after March 23, 2010;

   e. declare that the state defendants' enforcement of the Texas contraceptive-equity laws, including Tex. Ins. Code §§ 1369.104–.109 and 28 Tex. Admin. Code § 21.404(c), substantially burdens the exercise of religion, in violation of the Texas Religious Freedom Restoration Act;

   f. enjoin Commissioner Sullivan and the Texas Department of Insurance from enforcing the Texas contraceptive-equity laws, including Tex. Ins. Code §§ 1369.104–.109 and 28 Tex. Admin. Code § 21.404(c), and order Commissioner Sullivan and the Texas Department of Insurance to ensure that religious objectors in Texas can obtain health insurance that excludes contraceptive coverage, and to use their regulatory authority to require insurers to offer such plans if needed;

g.   award costs and attorneys' fees under 42 U.S.C. § 1988 and section 110.005(a)(4) of the Texas Civil Practice and Remedies Code;

h.   award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| Marvin W. Jones | Jonathan F. Mitchell |
| Texas Bar No. 10929100 | Texas Bar No. 24075463 |
| Christopher L. Jensen | Mitchell Law PLLC |
| Texas Bar No. 00796825 | 111 Congress Avenue, Suite 400 |
| Sprouse Shrader Smith PLLC | Austin, Texas 78701 |
| 701 S. Taylor, Suite 500 | (512) 686-3940 (phone) |
| Amarillo, Texas 79101 | (512) 686-3941 (fax) |
| (806) 468-3335 (phone) | jonathan@mitchell.law |
| (806) 373-3454 (fax) | |
| marty.jones@sprouselaw.com | H. Dustin Fillmore III |
| chris.jensen@sprouselaw.com | Texas Bar No. 06996010 |
| | Charles W. Fillmore |
| | Texas Bar No. 00785861 |
| | The Fillmore Law Firm, LLP |
| | 1200 Summit Avenue, Suite 860 |
| | Fort Worth, Texas 76102 |
| | (817) 332-2351 (phone) |
| | (817) 870-1859 (fax) |
| | dusty@fillmorefirm.com |
| | chad@fillmorefirm.com |
| Dated: July 28, 2020 | *Counsel for Plaintiffs* |